## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHRISTINA L. SMITH, | : | Case No. 3:19-cv-245 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

## I.    <u>Introduction</u>

Plaintiff Christina L. Smith filed an application for Disability Insurance Benefits and for a period of disability benefits in February 2016.  The claim was denied initially and upon reconsideration.  After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Stuart Adkins concluded Plaintiff was not eligible for past due benefits because she was not under a "disability" as defined in the Social Security Act until an age category change in August 2018.  The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action and seeks review only of the denial of benefits for the period prior to August 2018.  She asks that the case be remanded for benefits, or in the alternative, for further proceedings.  The Commissioner asks the Court to affirm the non-disability decision as to past due benefits.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 11), the Commissioner's Memorandum in Opposition (Doc. No. 15), Plaintiff's Reply (Doc. No. 16), and the administrative record (Doc. No. 8).

## II.  **Background**

Plaintiff asserts that she has been under a disability since August 28, 2014.  At that time, Plaintiff was considered a "person closely approaching advanced age" under Social Security Regulations.  *See* 20 C.F.R. § 404.1563(d).  On August 17, 2018, Plaintiff's age category changed, and she was then considered a "person of advanced age."  20 C.F.R. § 404.1563(e).  She has at least a high school education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 8-2, Page ID 48-66), Plaintiff's Statement of Errors (Doc. No. 11), the Commissioner's Memorandum in Opposition (Doc. No. 15), and Plaintiff's Reply (Doc. No. 16).  Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III.  **Standard of Review**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see* 42 U.S.C. § 423(a)(1).  The term "disability"—as defined by the Social Security act—has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant

paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. §423 (d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    **The ALJ's Decision**

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1:    Plaintiff did not engage in substantial gainful employment since the alleged onset date, August 28, 2014.

Step 2:    She has the severe impairments of fibromyalgia, neuropathy, venous insufficiency, depression, and anxiety.

Step 3:    She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work" subject to the following limitations: (1) lifting and/or carrying twenty pounds occasionally and ten pounds frequently, (2) standing and/or walking for about six hours in an eight-hour workday with permission to alternative between sitting and standing every fifteen minutes while at the work station, (3) no climbing ladders, ropes, scaffolds, (4) frequent climbing of ramps and stairs, (5) occasional stooping, kneeling, crouching, and crawling, (6) simple, routine tasks but not at a production rate pace, (7) occasional interactions with supervisors, coworkers and the general public, and (8) occasional changes to a routine work setting defined as one to two per week.

Step 4:    Plaintiff was unable to perform any past relevant work.

Step 5:    Prior to August 17, 2018, Plaintiff could perform a significant number of jobs that exist in the national economy.

Step 5:      Beginning on August 17, 2018, Plaintiff was unable to perform a significant number of jobs that exist in the national economy.

(Doc. No. 8-2, PageID 50-66).  Based on these findings, the Administrative Law Judge ultimately concluded that Plaintiff was not under a benefits-qualifying disability prior to August 17, 2018 and instead became disabled on that date.  *Id.* at 66.

## V.  <u>Discussion</u>

Plaintiff asserts several errors in the present action.  She primarily challenges the weighing of the joint opinion from treating psychiatrist, Dr. Simran Sehbi and therapist, Ms. Merope Patterson, and also the opinion from treating physician, Dr. Libby Wilson. Plaintiff alleges further error as to weighing of the non-treating source opinions and the residual functional capacity assessment.

### A.  Treating Source Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions and "[k]ey among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule."  *Rogers*, 486 F.3d at 242.  Controlling weight should be afforded to a treating-source opinion if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723).

If a treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

Additionally, an ALJ must provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). This "clear procedural requirement" certifies "that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.*

### i. Dr. Simran Sehbi and Ms. Merope Patterson

Plaintiff criticizes the weighing of the joint opinion issued by treating psychiatrist, Dr. Simran Sehbi, and therapist, Ms. Merope Patterson, that addressed Plaintiff's mental impairments. *Id.* at 1750. This joint opinion was not entitled to controlling or deferential weight and was instead afforded "little weight." (Doc. No. 8-2, PageID 62-63). In reaching this conclusion, the ALJ discussed the specific limitations that were articulated in the joint opinion as well as a limited treatment relationship between Plaintiff and the treating providers. *Id.* He also noted that the opinions were inconsistent with the other evidence in the record, such as the findings during the consultative psychological examination. *Id.*

Substantial evidence supports the ALJ's determination that the opinions were inconsistent with the evidence of record, including Dr. Sehbi's and Ms. Merope's own observations on mental status exam. For example, Ms. Merope had several encounters with Plaintiff. In early February 2017, Plaintiff was calm and cooperative on presentation. (Doc. No. 8-7, PageID 575). She was logical, goal directed with fair insight, impulse control, and judgment. *Id.* Later that month, Plaintiff was again observed as calm and cooperative. *Id.* at 570. She had good eye contact and was logical and goal directed. *Id.* In March 2017, Plaintiff denied recent depressive or psychotic symptoms, and denied problems with sleep or appetite. *Id.* at 581. She was observed as "stabilized on meds with no specific complaints." *Id.* The following month, Plaintiff reported "significant improvement in mood" and denied ongoing stressors. *Id.* at 583. Her thought process was logical, and goal directed. *Id.* Similar findings were reported in June. *Id.* at 589.

On mental status exam in July 2017, Dr. Sehbi observed that Plaintiff's mood/affect was minimally anxious to normal and that she was cooperative and had good rapport with the provider. *Id.* at 594. While she was initially tearful, Plaintiff relaxed and her attention, thought process, judgment and insight were categorized as "good." *Id.* In September, Plaintiff again was cooperative and had good rapport. *Id.* at 597-98. Her attention, thought process, judgment and insight were again noted as "good." *Id.* at 598.

These findings on exam do not align with some of the providers' own opinions. For example, Dr. Sehbi and Ms. Merope opined that Plaintiff's ability to maintain concentration, persistence and pace was marked to extreme. *Id.* at 604. Based on their treatment records, it appears as if this opinion was based on Plaintiff's reports of her

physical impairments rather than her mental impairments as the findings on mental status exam do not appear to align with marked to extreme limitations in this regard.

Looking to the psychological consultative evaluation, similar observations were made on mental status exam. Dr. Sarah Barwick, the consultative psychologist, similarly observed that Plaintiff was polite, cooperative, and established rapport with her. *Id.* at 418. Plaintiff was able to follow the conversation and did not appear easily distracted. *Id.* at 419. Although she maintained good eye contact, Plaintiff did present with a depressed mood and restricted affect. *Id.* She was alert and responsive, had sufficient judgment and demonstrated good insight. *Id.* Yet, despite these similar observations, Dr. Barwick's opinion included significantly less restrictive limitations. For example, contrary to the joint opinion that Plaintiff had a marked to extreme limitation in concentration, persistence, and pace, Dr. Barwick found that Plaintiff's symptoms "may result in a mild decline in attention and concentration skills." *Id.* at 420. This opinion, as well as Dr. Barwick's other observations, appear better aligned with Plaintiff's mental impairments than the marked to extreme findings opined to by Dr. Sehbi and Ms. Merope. Therefore, based on the record as a whole as well as the treating psychiatrist and therapist's own observations, the ALJ's weighing of this treating source opinion is supported by substantial evidence.

### ii.    Dr. Libby Wilson

Plaintiff also takes issue with the weighing of Dr. Libby Wilson's treating source opinion. Dr. Wilson's opinion was afforded "little weight," and was not entitled to controlling or deferential weight "as it [was] not fully supported by the record." (Doc. No. 8-2, PageID 62). Dr. Wilson's opinion included specific findings as to Plaintiff's physical

limitations, but these were discredited because the opinions "appear[ed] to be based on an uncritical acceptance of the claimant's subjective allegations, as nothing in her treatment notes support[ed] such extreme limitations." (Doc. No. 8-2, PageID 62).

These findings are not supported by substantial evidence. To start, the objective medical evidence fails to justify the ALJ's conclusion that Dr. Wilson based her opinions on an "uncritical acceptance of [Plaintiff's] subjective allegations." After ongoing and consistent reports of pain and discomfort, Dr. Wilson found that Plaintiff had been "struggling to work for several years," and that her "pain and neuropathy [was] getting progressively worse." (Doc. No. 8-7, PageID 362). These observations were based on her routine physical examinations and medical testing.

On exam in February 2014, Dr. Wilson observed decreased range of motion in Plaintiff's left hip. *Id.* In May 2014, Dr. Wilson noted that Plaintiff had been diagnosed with fibromyalgia and was on medication, but that it was not helping as she was having a lot of pain in her left foot. *Id.* at 363. On exam, Dr. Wilson again observed decreased range of motion of her left hip. *Id.* at 365. Plaintiff continued to report sustained pain and worsening fibromyalgia. Throughout 2015 and 2016, Dr. Wilson regularly observed sensitivity in Plaintiff's legs from her feet up to her knees on exam. *Id.* at 398, 402, 405, 411, 427, 433. Additionally, on the medical impairment questionnaire from September 2017, Dr. Wilson indicated that Plaintiff was positive for 11/18 tender points during her most recent exam, and she was also 3+ patella reflexes. *Id.* at 600. These findings were consistent with the findings of Plaintiff's rheumatologist, Dr. Maria Thomas-John. In 2014, she observed on exam that Plaintiff was positive for 12/18 tender points. *Id.* at 567.

Additional error was committed to the extent that the ALJ required objective medical evidence for Plaintiff's fibromyalgia because physical exam may have not fairly reflected the true manner and effects of the severe impairment. Case law establishes, and Soc. Sec. R. 12-2p, 2012 SSR LEXIS 1 indicates, that a patient suffering from fibromyalgia presents to physicians with no objective signs or symptoms. Indeed, "fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243 (footnote omitted) (citing, in part, *Preston v. Sec'y of HHS*, 854 F.2d 815, 820 (6th Cir. 1988)); see also *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (ALJ mistakenly "depreciated the gravity of Sarchet's fibromyalgia because of the lack of any evidence of objectively discernible symptoms, such as a swelling of the joints."); *Starcher v. Comm'r of Soc. Sec.*, No. 2:15-cv-3113, 2016 U.S. Dist. LEXIS 141273, 2016 WL 5929048, at *5 (S.D. Ohio, 2016) (Kemp, M.J.) report and recommendation adopted, 2016 U.S. Dist. LEXIS 151956, 2016 WL 6493427 (Nov. 2, 2016) (Graham, D.J.).

Nevertheless, even if the finding that Dr. Wilson's opinion was not entitled to controlling weight was supported by substantial evidence, the remainder of the weighing of Dr. Wilson's opinion was not. After determining that Dr. Wilson's opinion was not entitled to controlling weight, the ALJ's review should have proceeded to the next step in assessing the opinion's weight. In fact, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." Soc. Sec. R. 96-2p, 1996 WL 374188, at *4. These factors were not appropriately considered here.

As an example, the ALJ failed to consider the length and extent of Dr. Wilson's treatment relationship. Dr. Wilson had treated Plaintiff since at least March 2012, which increases the persuasiveness of her opinions. Likewise, the extent of her treatment relationship should have also bolstered her opinion as the record reflects that Dr. Wilson coordinated Plaintiff's treatment with several other providers. For example, Dr. Wilson referred Plaintiff to a rheumatologist, a podiatrist, and a vascular surgeon for consultation and more comprehensive treatment. (Doc. No. 8-7, PageID 564-68, 569, 671-72).

Attempting to justify the exclusion of a relevant factor, the length of the treatment relationship, the Commissioner maintains that "the ALJ was certainly aware of Dr. Wilson's treatment history," and that "it was reasonable of him to instead focus on a lack of support and inconsistency of the opinion rather than the length of treatment." (Doc. No. 15, PageID 1786). This argument fails for several reasons.

First, although the ALJ may have been "certainly aware" of the treatment history, the ALJ fails to acknowledge this treatment history or that he took this into account in weighing Dr. Wilson's opinion. And rather than engage in an even weighing of the relevant factors, the ALJ opted to focus only on factors that he found to discredit Dr. Wilson's opinion. Consistency and supportability may be highly relevant factors, but they are not the only factors. By way of excluding any discussion of other relevant factors, it is difficult to determine if the ALJ even considered such factors that may have supported a different conclusion. *Brooks v. Comm'r of Social Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[A] substantiality of evidence evaluation does not permit a selective reading of the record").

Additionally, the Commissioner undermines its own justification for this exclusion later in its response when discussing the weight assigned to Dr. Sehbi's opinion.  In doing so, the Commissioner states:

> The persuasiveness of Dr. Sehbi's opinion may indeed have been greater if she had treated Plaintiff for years rather than months, or at a dozen visits rather than three... Nonetheless, the fact that Dr. Sehbi's treatment relationship was limited in duration was a legitimate and reasonable consideration by the ALJ.

*Id.* at 1791.  This statement seems to suggest that the length of a treatment relationship is only relevant when it weighs against a medical opinion rather than in favor of it.  Likewise, this statement also supports the notion that Dr. Wilson's opinion should have been found to be more persuasive given that Dr. Wilson had treated Plaintiff for about two years and had more than thirty separate office encounters with her.  (Doc. No. 11, PageID 1751).

In light of the regulations, error was committed to the extent that the ALJ failed to meaningfully weigh the relevant factors set forth in in 20 C.F.R. §§ 404.1527 and 416.927. It should be further noted that the Commissioner does not argue harmless error.  Without the benefit of adversarial briefing regarding harmless error, venturing into this heavily evidence-dependent territory as to Dr. Wilson's opinion is unwarranted.

Accordingly, Plaintiff's asserted error as to Dr. Wilson's opinion is well-taken.  As a result, the undersigned need not address the remainder of Plaintiff's asserted errors.

## VI.    <u>Remand</u>

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

right.  *Bowen*, 478 F.3d at 746.  Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).  Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming, and the evidence of disability is not strong while contrary evidence is lacking.  However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-

step sequential analysis to determine anew whether Plaintiff was under a disability and

whether her application for Disability Insurance Benefits should be granted.

## IT IS THEREFORE ORDERED THAT:

1.    The ALJ's non-disability decision is vacated;

2.    No finding is made as to whether Plaintiff Christina L. Smith was under a "disability" within the meaning of the Social Security Act;

3.    This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this decision; and

2.    The case is terminated on the Court's docket.


March 26, 2021                                    s/Sharon L. Ovington
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge